NUMBER 13-07-543-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


IN RE MISSION HOSPITAL, INC.,

 




On Appeal from the County Court at Law No. 2 


of Hidalgo County, Texas.


 


MEMORANDUM OPINION



Before Justices Yañez, Rodriguez, and Benavides


Memorandum Opinion by Justice Yañez


 

 Relator, Mission Hospital, Inc. ("Mission"), has filed a petition for writ of mandamus
asking this Court to direct the trial court to grant its motion to compel arbitration against its
former employee, Carlos Aboytes. As discussed herein, we conditionally grant the writ.

I. Background


 Aboytes worked for Mission pursuant to an "Agreement for Contract Services"
("Agreement") as Mission's director of engineering, facility engineer, and plant operations
director. Mission terminated Aboytes's employment, and Aboytes brought suit against
Mission for wrongful discharge, breach of contract, and intentional infliction of emotional
distress. Mission moved to compel arbitration pursuant to an arbitration clause in the
Agreement. 

 The facts of this original proceeding are known to the parties so we do not recite
them here in further detail. Further, because all dispositive issues are clearly settled in law,
we issue this memorandum opinion and order pursuant to rules 47.4 and 52.8(d) of the
Texas Rules of Appellate Procedure. See Tex. R. App. P.47.4; 52.8(d). 

II. Federal or State Arbitration 


 We first address whether this matter is governed by the Federal Arbitration Act
("FAA") or the Texas General Arbitration Act ("TGAA"). See 9 U.S.C. §§ 1-16; Tex. Civ.
Prac. & Rem. Code Ann. §§ 171.001-.098 (Vernon 2005); In re Educ. Mgmt. Corp., 14
S.W.3d 418, 422 (Tex. App.-Houston [14th Dist.] 2000, orig. proceeding) (holding that
question of whether transaction affects interstate commerce, and thus whether federal act
governs, is one of fact where arbitration agreement is silent as to application of federal or
Texas act). 

 The FAA "applies to all suits in state or federal court when the dispute concerns 'a
contract evidencing a transaction involving commerce.'" Jack B. Anglin Co., Inc. v. Tipps,
842 S.W.2d 266, 269-70 (Tex. 1992) (orig. proceeding) (quoting 9 U.S.C.S. § 2 (2000));
In re Profanchik, 31 S.W.3d 381, 384 (Tex. App.-Corpus Christi 2000, orig. proceeding). 
The United States Supreme Court has held that the word "involving" in the FAA is broad
and the functional equivalent of "affecting," signaling Congress's intent to exercise its
Commerce Clause powers to the fullest. Allied-Bruce Terminix Cos. v. Dobson, 513 U.S.
265, 268 (1995); L&L Kempwood Assocs., L.L.P., v. Omega Builders, Inc., 9 S.W.3d 125,
127 (Tex. 1999) (per curiam) (orig. proceeding). 

 Aboytes argues that we should not address whether the FAA applies because this
issue is premature. According to Aboytes, if the Court were to find that arbitration should
be compelled, the arbitrator would have the discretion and ability to determine whether the
FAA applies. 

 We disagree. Whether the FAA applies is a threshold issue for our determination. 
See Hou-Scape Inc. v. Lloyd, 945 S.W.2d 202, 204 (Tex. App.-Houston [1st Dist.] 1997,
orig. proceeding). The answer to this question dictates the appropriate method for
appellate review for the trial court's refusal to compel arbitration. Under the TGAA, an
interlocutory appeal may be taken from a trial court's denial of a motion to compel
arbitration. Tex. Civ. Prac. & Rem. Code Ann. § 171.098(a)(1) (Vernon 2005). In contrast,
when a motion to compel arbitration is denied under the Federal Arbitration Act,
mandamus is the appropriate remedy. See In re D. Wilson Const. Co., 196 S.W.3d 774,
779 (Tex. 2006) (orig. proceeding). Accordingly, we proceed to determine whether the
FAA governs this dispute. 

 Relator produced the affidavit of Randy Slack, Chief Financial Officer of Mission,
who testified that: Mission was engaged in interstate commerce; the biomedical services
performed under the Agreement were regulated and subject to inspection by the Joint
Commission on the Accreditation of Hospitals, which has its principal place of business in
Illinois; Mission is subject to Medicare regulations and receives Medicare reimbursement;
Aboytes was engaged in interstate commerce while performing under the Agreement; and
Mission treats patients from out of state and purchases supplies and biomedical equipment
from around the country. 

 Aboytes does not contest or otherwise dispute the applicability of the FAA. We
conclude that the FAA governs this Agreement. See In re Nexion Health at Humble, Inc.,
173 S.W.3d 67, 69 (Tex. 2005) (orig. proceeding) (holding that Medicare payments made
to relator on behalf of patient was sufficient to establish interstate commerce and the FAA's
application); In re Anaheim Angels Baseball Club, Inc., 993 S.W.2d 875, 877-78 (Tex.
App.-El Paso 1999, orig. proceeding) (an employment relationship involving commerce,
which encompasses contracts relating to interstate commerce, is a sufficient transaction
to fall within the FAA); see also In re December Nine Co., 225 S.W.3d 693, 697-698 (Tex.
App.-El Paso 2006, orig. proceeding); In re Big 8 Food Stores, Ltd., 166 S.W.3d 869, 880
(Tex. App.-El Paso 2005, orig. proceeding).

III. Standard of Review


 A writ of mandamus will issue to correct a clear abuse of discretion when there is
no adequate remedy by appeal. See Walker v. Packer, 827 S.W.2d 833, 840 (Tex. 1992).
A trial court abuses its discretion if it reaches a decision so arbitrary and unreasonable as
to amount to a clear and prejudicial error of law or if it clearly fails to correctly analyze or
apply the law. In re Ford Motor Co., 165 S.W.3d 315, 317 (Tex. 2005) (orig. proceeding)
(per curiam). The relator has the burden to establish that the trial court abused its
discretion. See id. If a trial court erroneously denies a party's motion to compel arbitration
under the FAA, the movant has no adequate remedy at law and is entitled to a writ of
mandamus. In re Nexion Health at Humble, Inc., 173 S.W.3d at 69; Serv. Corp. Int'l v.
Lopez, 162 S.W.3d 801, 808 (Tex. App.-Corpus Christi 2005, orig. proceeding). 

IV. Validity and Scope of the Arbitration Agreement


 A party seeking to compel arbitration by a writ of mandamus must establish the
existence of a valid agreement to arbitrate under the FAA and show that the claims in
dispute are within the scope of the agreement. In re Bank One, N.A., 216 S.W.3d 825, 826
(Tex. 2007) (orig. proceeding) (per curiam); In re Kellogg Brown & Root, Inc., 166 S.W.3d
732, 737 (Tex. 2005) (orig. proceeding). In determining the validity of agreements to
arbitrate which are subject to the FAA, we generally apply state-law principles governing
the formation of contracts. In re Palm Harbor Homes, Inc., 195 S.W.3d 672, 676 (Tex.
2006) (orig. proceeding) (citing First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944
(1995)). Whether a valid arbitration agreement exists is a legal question subject to de novo
review. In re D. Wilson Const. Co., 196 S.W.3d at 781. If the trial court finds there is a
valid agreement to arbitrate, the burden shifts to the party opposing arbitration to prove his
defenses. J.M. Davidson, Inc. v. Webster, 128 S.W.3d 223, 227 (Tex. 2003). 

 Once a valid agreement to arbitrate has been established, the court must then
determine whether the nonmovant's claims fall within the scope of the arbitration clause. 
In re FirstMerit Bank, N.A., 52 S.W.3d 749, 753 (Tex. 2001) (orig. proceeding). To
determine whether an existing arbitration agreement covers a party's claims, a court must
"focus on the complaint's factual allegations rather than the legal causes of action
asserted." Id. at 754. Federal policy embodied in the FAA favors agreements to arbitrate,
and courts must resolve any doubts about an arbitration agreement's scope in favor of
arbitration. Id. at 753. If the arbitration agreement encompasses the claims and the party
opposing arbitration has failed to prove its defenses, the trial court has no discretion but
to compel arbitration and stay its own proceedings. Id. at 753-54; D.R. Horton, Inc. v.
Brooks, 207 S.W.3d 862, 866-67 (Tex. App.-Houston [14th Dist.] 2006, no pet.);
Feldman/Matz Interests, L.L.P. v. Settlement Capital Corp., 140 S.W.3d 879, 883 (Tex.
App.-Houston [14th Dist. 2004, no pet.).

 Aboytes argues that there is not a valid agreement to arbitrate between the parties.
Specifically, Aboytes contends that the arbitration clause is unenforceable because the
terms of the clause are too indefinite to show meaningful agreement. Aboytes notes that
the arbitration clause fails to address, inter alia, the time in which arbitration may be had,
the division and payment of the costs of arbitration, the number of arbitrators, the types of
evidence to be considered at arbitration, and the standard of review for the arbitration
decision.

 The arbitration clause in the Agreement between the parties provides as follows:

 Any controversy, dispute or disagreement arising out of or relating to this
Agreement, or the breach thereof, shall be settled by arbitration, which shall
be conducted in Mission, Texas, in accordance with the National Health
Lawyers Alternative Dispute Resolution Service Rules of Procedure for
Arbitration, and judgment on the award rendered by the arbitration may be
entered in any court having jurisdiction thereof.


The Rules of Procedure for Arbitration are incorporated by reference into the Agreement
to arbitrate, and are, accordingly, part of the contract. In re Bank One, N.A., 216 S.W.3d
at 826. These Rules of Procedure address the complained-of topics allegedly omitted from
the Agreement. We conclude that the Agreement was sufficiently definite for the parties
to understand their obligations. See Atofina Petrochemicals, Inc. v. Cont'l Cas. Co., 185
S.W.3d 440, 443 (Tex. 2005) (per curiam). Accordingly, we conclude that Mission has
established the existence of a valid agreement to arbitrate under the FAA. We further
conclude that Aboytes's claims for wrongful discharge, breach of contract, and intentional
infliction of emotional distress fall within the broad scope of the arbitration clause, which
applies to "[a]ny controversy, dispute or disagreement arising out of or relating to this
Agreement, or the breach thereof." See Prudential Sec. Inc. v. Marshall, 909 S.W.2d 896,
899 (Tex. 1995) (per curiam) (holding that claims for defamation fell within the broad scope
of an agreement to arbitrate "any dispute, claim or controversy").

 Because an order denying arbitration must be upheld if it is proper on any basis
considered by the trial court, we will next consider Aboytes's alleged defenses to the
Agreement. See In re H.E. Butt Grocery Co., 17 S.W.3d 360, 367 (Tex. App.-Houston
[14th Dist.] 2000, orig. proceeding); City of Alamo v. Garcia, 878 S.W.2d 664, 665 (Tex.
App.-Corpus Christi 1994, no writ).

V. Defenses


 Aboytes contends that the arbitration Agreement is unconscionable and illusory. 
Aboytes further asserts that Mission waived its right to arbitrate. 

 Aboytes contends that the arbitration Agreement is unconscionable because
arbitration might subject him to substantial costs and fees. Both the United States and
Texas Supreme Court have recognized that the existence of large arbitration costs could
preclude litigants from effectively vindicating their statutory rights in an arbitral forum.
Green Tree Fin. Corp. v. Randolph, 531 U.S. 79, 90 (2000); In re FirstMerit Bank, N.A., 52
S.W.3d at 756. While neither court specified how detailed the showing of prohibitive
expense must be, the party opposing arbitration must prove the likelihood of incurring such
costs and produce some specific information substantiating the alleged costs. Green Tree
Fin. Corp., 531 U.S. at 90; In re FirstMerit Bank, N.A., 52 S.W.3d at 756.

 Aboytes has provided no evidence regarding the alleged costs of the arbitration or
his ability, or lack thereof, to pay such costs. Because the record contains no specific
evidence that Aboytes will actually be charged excessive arbitration fees, we conclude that
there is legally insufficient evidence that the Agreement is unconscionable based on
excessive costs. In re FirstMerit Bank, N.A., 52 S.W.3d at 757.

 Aboytes also contends that the Agreement to arbitrate is illusory because Mission
avoided its mutual obligation to arbitrate by exercising its "sole discretion" to terminate the
contract. Aboytes misconstrues the terms of the written Agreement. Under the
Agreement, the obligation to arbitrate is not extinguished upon termination of the
employment Agreement between the parties. The arbitration clause applies to "[a]ny
controversy, dispute or disagreement arising out of or relating to this Agreement, or the
breach thereof." Aboytes provides this Court with no basis for construing the Agreement
as contingent on his continued employment with Mission. Accordingly, we conclude that
the Agreement is not illusory. See In re Dillard Dep't Stores, Inc., 198 S.W.3d 778, 782
(Tex. 2006) (orig. proceeding) (an arbitration agreement is not illusory, despite being
formed in an at-will employment relationship, if the promises to arbitrate do not depend on
continued employment); J.M. Davidson, Inc., 128 S.W.3d at 230 n.2 (citing cases
supporting the rule that "if a party retains the unilateral, unrestricted right to terminate the
arbitration agreement, it is illusory."). Moreover, we would note that the Agreement
provides both parties with the bilateral right to terminate the Agreement, without cause,
upon furnishing the other party with sixty days' notice. The Agreement further allows
Mission to terminate the Agreement for cause in its sole discretion, or upon death. In the
instant case, Mission terminated Aboytes, without cause, following its provision of sixty
days' notice.

 Finally, Aboytes contends that Mission waived its right to arbitrate because it
terminated his employment rather than invoking the arbitration clause. There is a strong
presumption against waiver. In re Bank One, N.A., 216 S.W.3d at 827. Waiver of the right
to arbitrate must be intentional. See id. A party waives an arbitration clause when it
substantially invokes the judicial process to the other party's detriment. See id.

 Under the Agreement at issue, both Mission and Aboytes retained the right to
terminate the Agreement without cause upon providing sixty days' notice to the opposing
party. Mission elected to exercise this option and, as discussed previously, the Agreement
to arbitrate was not extinguished by termination of Aboytes's employment. Mission's
actions in terminating Aboytes were not inconsistent with its right to arbitrate. Moreover,
under the applicable law governing waiver of the right to arbitrate, Mission's actions fail to
constitute a substantial invocation of the judicial process to Aboytes's detriment. See id. 
Accordingly, we cannot conclude that Mission waived its right to arbitrate. 

VI. Conclusion


 We conclude that the trial court erroneously denied Mission's motion to compel
arbitration. We conditionally grant the writ of mandamus and direct the trial court to vacate
the order denying Mission's motion to compel arbitration and enter an order compelling the
parties to arbitration. The writ will issue only if the trial court fails to comply.



 
 LINDA REYNA YAÑEZ,

 Justice






Memorandum opinion delivered and filed 

this the 18th day of October, 2007.